# IN THE UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF GEORGIA

### MACON DIVISION

| | |
|---|---|
| SHEREE WOLFENDEN, | |
| Plaintiff, | Civil Action No.: |
| v. | |
| MEDNAX SERVICES, INC., and NORTH AMERICAN PARTNERS IN ANESTHESIA LLP, and AMERICAN ANESTHESIOLOGY OF GEORGIA, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

SHEREE WOLFENDEN ("Plaintiff"), proceeding *pro se*, as and for her Complaint against Mednax Services, Inc. ("Mednax"), and North American Partners in Anesthesia LLP ("NAPA"), and American Anesthesiology of Georgia, LLC ("AAG"), (together, where appropriate, as "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1.     This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiff's rights guaranteed to her by: (i) the anti-race discrimination and anti-retaliation provisions of Section 1981 of Title 42 of the United States Code, 42 U.S.C. § 1981 ("Section 1981"); (ii) the anti-race discrimination and anti-retaliation provisions of Title VII

of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; and (iii) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff, who is Caucasian, worked for Defendants - - three separate entities that together, as explained below with respect to certain time periods, operated as Plaintiff's joint employers - - from November 2014 to June 28, 2020, as a Certified Registered Nurse Anesthetist ("CRNA") in Macon, Georgia.  As described below, Defendants discriminated against Plaintiff on the basis of, or at least motivated by, her race, by subjecting her to disparate treatment and a hostile work environment, and then retaliated against her for complaining about the discrimination by taking a series of adverse employment actions against her, culminating in the termination of her employment.  Worse, after learning that Plaintiff had filed her original Charges of Discrimination ("Charge(s)") with the United States Equal Employment Opportunity Commission ("EEOC"), Defendants NAPA and AAG retaliated against Plaintiff yet again by serving her with a threatening letter designed to dissuade her, or any reasonable person, from continuing with the case.

## JURISDICTION AND VENUE

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, *et. seq.*

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      On November 27, 2020, Plaintiff filed with the EEOC three separate Charges against Defendants Mednax and AAG, as well as against North American Partners in Anesthesia (Georgia), LLC ("NAPA Georgia," which was Defendant NAPA's wholly-owned subsidiary at

the time), which the EEOC assigned Charge Nos. 410-2021-01253, 410-2021-01253, and 410-2021-01253, respectively, asserting claims of race discrimination and retaliation in violation of Title VII based on the events alleged herein.

6.      On February 15, 2021, Plaintiff filed Amended Charges of Discrimination alleging additional retaliation against Plaintiff by NAPA Georgia and AAG.

7.      On May 20, 2021, the EEOC issued to Plaintiff a "Notice of Right to Sue" for the Charges as against Defendants Mednax and AAG, which Plaintiff received that same day.  On May 25, 2021, the EEOC issued to Plaintiff a "Notice of Right to Sue" for the Charge as against NAPA Georgia, which Plaintiff also received that same day.  Copies of the "Notices of Right to Sue" are attached hereto as **Exhibit A**.

8.      Plaintiff has commenced this lawsuit within ninety days of receiving each Notice of Right to Sue.

## PARTIES

9.      At all relevant times herein, Plaintiff worked for Defendants in Georgia and was a "person" and an "employee" entitled to protection as defined by Section 1981 and Title VII.

10.      At all relevant times, Defendant Mednax was and is a Florida corporation, with its principal place of business in Florida, and which is registered with the Georgia Corporations Division to do business in Georgia.  Mednax has designated its agent for service of process as C T Corporation System, located at 289 S. Culver Street, Lawrenceville, Georgia 30046.

11.      At all relevant times, Defendant NAPA was and is a limited liability partnership based in New York that does business in various locations across the country, including in Georgia. Up until its dissolution with the Georgia Corporations Division on December 21, 2020, NAPA Georgia was a Georgia limited liability company, and a wholly-owned subsidiary of NAPA, with

its principal place of business in Georgia and that was registered with the Georgia Corporations Division to do business in Georgia. NAPA maintains its principal office located at 68 South Service Road, Suite 350, Melville, New York 11747.

12.     At all relevant times, Defendant AAG was and is a Georgia limited liability company with its principal place of business located at 1000 Medical Center Boulevard, Lawrenceville, Georgia 30046. AAG has designated its agent for service of process as United Corporate Services, Inc., located at 4228 First Avenue, Suite 10, Tucker, Georgia 30084.

13.     At all relevant times herein, Defendants were each "employers" within the meaning of Title VII as they each employed at least fifteen employees

## BACKGROUND FACTS

14.     Defendants are separate entities that each provide anesthesiology subspecialty services, such as providing patients with anesthesia, intensive care medicine, and pain management care before, during, and after surgery, at various hospitals and medical facilities across several states, including within the state of Georgia.

15.     From at least 2014 until on or around May 6, 2020, AAG operated as one of several locations of American Anesthesiology, Inc., and was a wholly-owned subsidiary of Mednax. On or around May 6, 2020, NAPA Georgia acquired all of American Anesthesiology, Inc., including AAG, from Mednax.

16.     Upon NAPA Georgia's dissolution on December 20, 2020, AAG remained under NAPA's umbrella as NAPA's wholly-owned subsidiary.

17.     At all relevant times, AAG, whether it was owned by Mednax or NAPA Georgia, provided and still provides its services to patients at The Medical Center, Navicent Health ("Navicent"), located in Macon, Georgia.

4

18.     Plaintiff was employed directly by AAG - - which was owned by its different parent companies at different times as just explained - - from November 2014 to June 28, 2020, as a CRNA at Navicent.  In that role, Plaintiff was responsible for administering anesthesia and monitoring patients through their surgeries.

19.     Throughout Plaintiff's employment, AAG and its parent company at the time shared various human resources functions relating to the employment of CRNAs, such as Plaintiff, who worked at Navicent.  For example, when Mednax owned AAG, Mednax's employees handled the termination or separation of employment for CRNAs working at Navicent.  Moreover, this continued even after Mednax sold AAG to NAPA Georgia, as Mednax employees remained at Navicent to carry out personnel-related functions, including with respect to the termination of Plaintiff's employment.   When NAPA Georgia owned AAG, NAPA Georgia's employees interviewed CRNAs at Navicent, including Plaintiff, in response to complaints made about discrimination or workplace safety issues.  NAPA Georgia also supervised the CRNAs' work on a daily basis.  For its part, AAG was responsible for setting forth the work duties and schedules of and paying and issuing tax forms to the CRNAs working at Navicent, such as Plaintiff.

20.     Plaintiff worked without discriminatory incident until June 2020.

21.     However, in or around June 2020, Mednax and AAG permitted two African American CRNAs with whom Plaintiff worked, Sheila Sumpter and Erica Moore, to wear Black Lives Matter jewelry at work even though doing so violated Navicent's Dress Code policy and even though Plaintiff was required to abide by that dress code as it was considered dangerous for a CRNA to have jewelry of any kind dangling from the body.  Plaintiff complained to NAPA's Anesthesiology Practice Director, Mercedes Vierta, and Plaintiff's supervisor, Chief Anesthetist

April Tanner, about the disparate application of the dress code to employees of different races, but Sumpter and Moore were permitted to continue wearing this jewelry.

22.     Moreover, Sumpter, as well as another African American CRNA at Navicent, Bertha Onyemaobi, sent racist text messages to Plaintiff. For instance, on June 13, 2020, in the height of the riots in Atlanta, Plaintiff sent a group text message to Sumpter, Onyemaobi, and Moore, and one other African American CRNA, Ursula DaSilva, expressing concern for the safety of Moore's husband, who is a police officer for the SWAT team in Atlanta, who lived in close proximity to where the violent riots had taken place. Notwithstanding her sincere expression of concern, the following day, on June 14, 2020, Sumpter replied in the group text that it was "inappropriate for [Plaintiff] to express concern for [Moore's] husband in a group text like this." Onyemaobi added fuel to the fire by stating that Plaintiff "cannot even begin to imagine[,] much less understand[,]" the Black Lives Matter movement, and thus her opinion should be disregarded. Sumpter added that Plaintiff "will never be black or see it from a black person's eyes," so she would never understand the issues that the African American CRNAs had with her.

23.     After that June 14, 2020 text message exchange, Onyemaobi and Sumpter complained to NAPA Georgia's Human Resources about the text message that *Plaintiff* had sent to them. Later that evening, still on June 14, 2020, Christie Sherman, NAPA Georgia's Market Director, responded to the complaint by reprimanding only Plaintiff over the phone, and instructing Plaintiff to stop texting the African American CRNAs. Sherman further instructed Plaintiff, and only Plaintiff, to "Cease and Desist all communication with persons in the group text."

24.     While on that phone call, Plaintiff complained to Sherman that it was actually the African American CRNAs who were harassing her based on her race with their hateful and accusatory text messages. Specifically, Plaintiff told Sherman that she wanted Defendants to

investigate harassment directed at her by the other CRNAs because they were ganging up on her and harassing her based on her race. However, Sherman never reprimanded any of the African American CRNAs or otherwise told them to stop communicating with Plaintiff despite Plaintiff's complaint.

25.     Plaintiff reiterated her June 14, 2020 complaint in an e-mail to Sherman on June 16, 2020, citing the "discrimination," "bullying," and race-based "taunting" prohibited by Mednax's "Harassment" policy. Also on June 16, 2020, Plaintiff emailed her dress code complaint to Sherman with a copy of Navicent's "Dress Code" policy, noting that the issue had remained unaddressed.

26.     The retaliation against Plaintiff began almost immediately thereafter.

27.     First, on June 20, 2020, Vierta changed only Plaintiff's schedule and removed her from her usual night shift effective the next day, which caused Plaintiff to miss out on receiving premium pay for working the night shifts. Instead, Vierta scheduled Onyemaobi to work those shifts in Plaintiff's place.

28.     Additionally, during the following week, Plaintiff's schedule was unilaterally changed against her wishes several more times, each time preventing her from working her usual night shift. In response, Plaintiff complained via text message on June 25, 2020, to Dr. Robert Lane, Mednax's and NAPA Georgia's Medical Director of Anesthesia Practice, that her schedule "had been changed again-5th time and this is 7 days of emotional stain on me," and stated that this was against the normal scheduling practice throughout her employment. While Dr. Lane apologized, nothing was done to correct the issue.

29.     On June 27, 2020, Sati Schiano, Mednax's Senior Human Resources Executive, called Plaintiff to inform her that she could voluntarily resign or be terminated for cause based on

the text messages between the CRNAs. After Plaintiff declined to resign on terms that Defendants

demanded, Defendants terminated Plaintiff's employment effective June 28, 2020.

30.     Plaintiff thereafter filed her EEOC Charges on November 27, 2020, which the

EEOC forwarded to Mednax, AAG, and NAPA Georgia on or around December 1, 2020.

31.     In a blatant act of continued retaliation, on December 29, 2020, counsel for AAG

and NAPA sent a letter to Plaintiff demanding that "[Plaintiff] immediately cease and desist from

contacting any NAPA employees, whether in person or any (sic) phone, email, text message, social

media, or any other form of communication . . . [and] from making any disparaging remarks about

NAPA to its business partners, affiliates, etc., or attempting to interfere in its business

relationships." NAPA also threatened that if Plaintiff did not comply with those demands, it would

"pursue all rights and remedies available to it under the law, including, but not limited to, the

involvement of law enforcement and legal action."

32.     In response, Plaintiff filed Amended Charges on February 15, 2021.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Race Discrimination in Violation of 42 U.S.C. § 1981*

33.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above

with the same force and effect as if more fully set forth herein.

34.     Section 1981 prohibits employers from discriminating against employees on the

basis of their race.

35.     As described above, Defendants are persons within the meaning of Section 1981,

while Plaintiff is a person within the meaning of Section 1981.

36.     As also described above, Defendants discriminated against Plaintiff on the basis of

her race, in violation of Section 1981, by denying her the same terms and conditions of

employment available to other employees of a different race, and by denying her the opportunity to work in an employment setting free of unlawful discrimination.

37.     As also described above, Defendants discriminated against Plaintiff on the basis of her race, in violation of Section 1981, by creating, fostering, condoning, accepting, ratifying, and/or otherwise failing to prevent a hostile work environment that included, among other things, severe or pervasive racial harassment against Plaintiff by her supervisors and coworkers, and by subjecting her to disparate working conditions.

38.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or non-economic damages, including, but not limited to, loss of past and future income, compensation and benefits, mental anguish and emotional distress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

39.     Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to an award of punitive damages.

40.     Plaintiff is also entitled to attorneys' fees for Defendants' violations of Section 1981.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Retaliation in Violation of 42 U.S.C. § 1981*

41.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

42.     Section 1981 prohibits employers from retaliating against employees for lodging good faith opposition to discrimination occurring in the workplace.

43.     As described above, Defendants are persons within the meaning of Section 1981, while Plaintiff is a person within the meaning of Section 1981.

44.     As also described above, after Plaintiff engaged in activity protected by Section 1981, Defendants retaliated as also detailed above.

45.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or non-economic damages, including, but not limited to, loss of past and future income, compensation and benefits, mental anguish and emotional distress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

46.     Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to an award of punitive damages.

47.     Plaintiff is also entitled to attorneys' fees for Defendants' violations of Section 1981.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Race Discrimination in Violation of Title VII*

48.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

49.     Title VII prohibits employers from discriminating against employees on the basis of their race.

50.     As described above, Defendants are employers within the meaning of Title VII, while Plaintiff is an employee within the meaning of Title VII.

51.     As also described above, Defendants discriminated against Plaintiff on the basis of her race, in violation of Title VII, by denying her the same terms and conditions of employment

available to other employees of a different race, and by denying her the opportunity to work in an employment setting free of unlawful discrimination.

52.     As also described above, Defendants discriminated against Plaintiff on the basis of her race, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or otherwise failing to prevent a hostile work environment that included, among other things, severe or pervasive racial harassment against Plaintiff by her supervisors and coworkers, and by subjecting her to disparate working conditions.

53.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or non-economic damages, including, but not limited to, loss of past and future income, compensation and benefits, mental anguish and emotional distress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

54.     Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

55.     Plaintiff is also entitled to attorneys' fees for Defendants' violations of Title VII.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Retaliation in Violation of Title VII*

56.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

57.     Title VII prohibits employers retaliating against employees for lodging good faith opposition to discrimination occurring in the workplace.

58.     As described above, Defendants are employers within the meaning of Title VII, while Plaintiff is an employee under Title VII.

11

59.     As also described above, after Plaintiff engaged in activity protected by Title VII, Defendants retaliated as also detailed above.

60.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or non-economic damages, including, but not limited to, loss of past and future income, compensation and benefits, mental anguish and emotional distress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

61.     Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

62.     Plaintiff is also entitled to attorneys' fees for Defendants' violations of Title VII.

## **DEMAND FOR A JURY TRIAL**

63.     Pursuant to FRCP 38(b), Plaintiff demands a trial by jury on all claims in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a.      A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States laws;

b.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

12

c.      An order restraining Defendants from any retaliation against Plaintiff for participation in any form of this litigation;

d.      Granting Plaintiff all economic damages that she has sustained as a result of Defendants' unlawful conduct, including general and special damages for past and future lost compensation and benefits that she would have received but for Defendants' conduct, including but not limited to back pay and front pay, whether legal or equitable in nature;

e.      Granting an award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with her claims;

f.      Granting an award of damages to be determined at trial to compensate Plaintiff for harm to her professional and personal reputations in connection with her claims;

g.      Awarding Plaintiff her reasonable attorneys' fees, if she retains an attorney who notices an appearance, as well as her costs and disbursements incurred in connection with this action, including expert witness fees and any other costs and expenses;

h.      Granting an award of punitive damages, to the extent permitted by law, commensurate with Defendants' ability to pay;

i.      Pre-judgment and post-judgment interest, as provided by law; and

j.      Granting Plaintiff other and further relief as this Court finds necessary and proper.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: Albany, Georgia
       August 18, 2021

Respectfully submitted,

Sheree Wolfenden
*Pro Se Plaintiff*
249 Pine Avenue, Apt. 505
Albany, Georgia 31701
P: (404) 431-3388
E: crnaatty@aim.com

14